# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs September 5, 2013

## IN RE LAVANIE L. L.[1]

**Appeal from the Juvenile Court for Knox County**
**No. 108684    Hon. Timothy E. Irwin, Judge**

---

**No. E2013-00887-COA-R3-PT-FILED-OCTOBER 31, 2013**

---

This is a termination of parental rights case in which the Tennessee Department of Children's Services filed a petition to terminate the parental rights of Father to the Child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of Father's parental rights on the statutory grounds of abandonment and severe child abuse and that termination of his rights was in the Child's best interest. Father appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which, CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Bernadin L.

Robert E. Cooper, Jr., Attorney General and Reporter, and Martha A. Campbell, Deputy Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

Mary L. Ward, Knoxville, Tennessee, guardian ad litem for the minor, Lavanie L. L.

---

[1]This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

# OPINION

## I. BACKGROUND

Lavanie L. L. ("the Child") was born to Adeline D. ("Mother") and Bernadin L. ("Father") on March 20, 2000 in Florida. Mother and Father were married. Mother was 13 years when she conceived the Child with Father, who was 22 years old at the time. Mother and Father became estranged due to Father's alleged physical abuse of Mother, who eventually filed for divorce and absconded with the Child. Since that time, Father failed to maintain a relationship with the Child.

Mother lived in various places throughout the Child's upbringing until she eventually moved to Tennessee. On May 3, 2007, the Tennessee Department of Children's Services ("DCS") removed the Child from Mother's care because Mother had left the Child alone for "extended periods of time" in a room that was found unfit for habitation. The Child was found to be dependent and neglected and was placed in foster care. Mother's parental rights were eventually terminated.

After some searching, DCS located Father, who was in pre-trial detention in Florida because he had been charged with multiple counts of sexual battery of a child less than 12 years old and lewd and lascivious molestation of a child less than 12 years old. It was later determined that Father had been in jail since June 18, 2006. In 2012, Father was eventually found guilty of sexual battery of a child less than 12 years old and lewd and lascivious molestation of a child less than 12 years old. He received sentences of life imprisonment and 25 years for his respective convictions, which he has since appealed.

On October 2, 2012, DCS filed a petition to terminate Father's parental rights to the Child. DCS alleged that Father had abandoned the Child by engaging in conduct that exhibited a wanton disregard for the welfare of the Child; that Father had committed severe child abuse against another child residing temporarily or permanently in his home and had been sentenced to more than two years of imprisonment for his conduct; and that the conditions which led to removal persisted. DCS later amended the petition to remove the ground relating to the persistence of conditions. The case proceeded on the remaining statutory grounds.

A hearing on the termination petition was held on March 14, 2013. Laura Clabo, a DCS employee, testified that except for a six-month period of time, she had been the Child's case manager since the Child's removal. She recalled that the Child had no memory of Father and could only recount Father's first name. She stated that Mother supplied Father's last name. She eventually located Father in the Miami-Dade County Jail in Florida. She

claimed that Father had since been placed in the state prison facility after being convicted of two felonies. She identified the certified criminal convictions, which provided that Father had been sentenced to 25 years for the sexual battery conviction and had received a sentence of life imprisonment for the lewd and lascivious conviction. She related that the events which led to the convictions occurred sometime between 2003 and 2006.

Ms. Clabo testified that Father had last visited the Child before the Child's third birthday. She recalled that Father suggested she contact his sister to inquire as to whether his sister could serve as an alternative placement. She said that she contacted the sister and gave her the pertinent information to file a petition but that "nothing ever came of that." She stated that the Child was eventually placed in a foster home in April 2008 and that the Child had remained in the home since that time. She said that the Child was "doing wonderful."

Father conceded that he had been convicted of sexual battery of a child and lewd and lascivious molestation of a child and that he had also been charged with the same offenses relative to a second child. He claimed that the prosecutor declined to prosecute him on the charges relating to the second child after he had been convicted of the offenses relating to the first child. He stated that he knew the female victims through his relationship with their respective mothers. He insisted that he never stayed in the same home with the first child but conceded that he had stayed in the same home with the second child, from time to time. He stated that both children were approximately three years older than the Child. He stated that he had appealed his convictions, which were currently upon remand to the trial court because of an issue with the trial transcript.

Father claimed that in 2003, the Child was living with him when he petitioned the court for custody after learning that Mother had been arrested. He stated that his petition was dismissed after Mother retrieved the Child and never returned. He said that he last saw the Child in 2005, when she visited him for the day. He related that after that time, he wrote the Child letters, spoke with her on the telephone, and occasionally submitted child support payments to Mother through relatives.

Father acknowledged that he had received a letter in which the Child had informed him that she wished to be adopted. He opined that he did not know whether the Child had actually written the letter. He stated that he objected to the Child's adoption because he loved her and because he wanted her to develop a relationship with her relatives. He conceded that his relatives were unable to care for the Child at the present time and that attempts by his relatives to gain custody were rebuffed by DCS for various reasons. He believed that he would be able to care for the Child once his convictions were overturned on appeal.

The Child, who was almost 13 years old at the time of the trial, testified that she only remembered talking to Father on the telephone "[s]ometimes." When asked whether she remembered Father, she stated, "I remember him, but I don't remember anything about him." She declared that she was happy in her foster home and that she wished to be adopted soon because she only had five more years of her childhood left.

The Child's foster mother testified that the Child had resided in her home for approximately five years and had developed a sisterly relationship with her other foster child, who was 12 years old. She related that the Child was doing well in school and had been through counseling. She claimed that she was ready to adopt the Child.

The guardian ad litem stated that she believed that termination of Father's parental rights was in the Child's best interest.

Following the presentation of the above evidence, the trial court found that there was clear and convincing evidence to establish that Father had abandoned the Child by exhibiting a wanton disregard for the Child's welfare, that Father had been found to have committed severe child abuse, and that Father had been sentenced to more than two years imprisonment for his conduct. In so finding, the court stated,

> [Father's] repeated offenses occurred between June 2002 and April 2006. They included intercourse, fellatio, and fondling. The victim [] was ten years old at the time of [Father's] arrest. He had been in a relationship with the child's mother and described himself as the child's babysitter. Similar charges involving a second victim were nolle prossed after sentencing on the first convictions.

> Upon these facts, the [c]ourt finds that prior to his conviction, [Father] engaged in conduct which exhibits a wanton disregard for the welfare of the [C]hild.

> [The court] further finds that [Father] has been found to have committed severe child abuse and to have been sentenced to more than two (2) years imprisonment for conduct which has been or is found to be severe child abuse.

The court further found that termination of Father's parental rights was in the best interest of the Child. This timely appeal followed.

## II.  ISSUES

We consolidate and restate the issues raised on appeal by Father as follows:

A.    Whether clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-102.

B.    Whether clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(4) and (5).

B.  Whether clear and convincing evidence supports the trial court's ruling that termination of Father's parental rights was in the Child's best interest pursuant to Tennessee Code Annotated section 36-1-113(I).

## III.  STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988).  This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).  "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)).  "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).  Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97.  A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be

correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

Citing *In re Shannon P.*, No. E2012-00445-COA-R3-PT, 2013 WL 3777174 (Tenn. Ct. App. July 16, 2013), Father asserts that the trial court lacked sufficient evidence to find that he had abandoned the Child because his convictions "cannot serve as res judicata" while under appellate review. DCS responds that clear and convincing evidence supported termination based upon the statutory ground of abandonment because of his conduct that led to his convictions. DCS states that the court also properly considered the convictions because the court need not look beyond a judgment of conviction in termination proceedings.

Relative to the alleged abandonment of the Child, the Tennessee Code provides, in pertinent part,

(1)(A) For purposes of terminating the parental [] rights of [a parent] to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

As a threshold issue, we must address Father's contention that the trial court was precluded from considering his criminal convictions pursuant to this court's holding in *Shannon*. The facts in this case are materially different. In *Shannon*, mother objected to the use of a magistrate order in which the court found that she had committed severe child abuse. 2013 WL 3777174, at *4. The order was under review. *Id.* This court ultimately held that

the use of the order was unnecessary because the trial court found in the termination proceedings that mother had committed severe child abuse. *Id.* The judgments relied upon in this case were convictions obtained following a jury trial. We do not believe the General Assembly intended for children to languish in custody based upon the mere possibility that a conviction could be reversed or a sentence reduced. *See In re Audrey S.*, 182 S.W.3d at 877 (considering the application of Tennessee Code Annotated section 36-1-113(g)(6) when the parent had filed a petition for post-conviction relief). This court has repeatedly held that trial courts considering termination petitions need not look beyond the judgment of conviction. *Id.* (citations omitted). The statute at issue is silent as to the consideration of the status of the conviction.

Moreover, the statute instructs courts to consider a parent's conduct prior to his incarceration. Under this ground of abandonment, the parent's incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental *behavior* that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866 (emphasis added). The court may consider any relevant conduct that occurred prior to incarceration and is not limited to reviewing the four months immediately preceding the incarceration. *Id.* at 870-71. This court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68 (citations omitted).

In addition to Father's criminal behavior that led to his convictions, Father also failed to provide adequate support and supervision for the Child. As evidenced by the Child's removal from Mother, the Child was in need of support and supervision from Father. Father asserted at trial that he occasionally submitted child support through relatives but offered no evidence in support of his assertion. Father's last visitation with the Child occurred on an unspecified date in 2005. Father was content with limited telephone calls and correspondence through letters since that time. Despite Father's claims of contact, the Child had no memory of Father when she was removed from Mother and could not even recount Father's last name. With these considerations in mind, we conclude that Father abandoned the Child by exhibiting a wanton disregard for the welfare of the Child. Thus, a statutory ground existed for the termination of Father's parental rights.

B.

Only one statutory ground must be established by clear and convincing evidence to justify termination of Father's parental rights. Tenn. Code Ann. § 36-1-113(c). Having

found clear and convincing evidence to support the statutory ground of abandonment, we decline to address the remaining grounds.

C.

Having concluded that there was clear and convincing evidence supporting a statutory ground to terminate Father's parental rights, we must consider whether termination of Father's parental rights was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (I) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against Father. He had not made the adjustment of circumstances necessary to provide a stable home for the Child. Tenn. Code Ann. § 36-1-113(i)(1). He had not visited the Child since 2005. Tenn. Code Ann. § 36-1-113(i)(3). The Child had not maintained a meaningful relationship with Father. Tenn. Code Ann. § 36-1-113(i)(4). The Child resides in a safe and stable foster home with a foster mother that expressed a desire to adopt her. Removing the Child would traumatize her. Tenn. Code Ann. § 36-1-113(i)(5). Questions remain as to whether Father's potential home would be safe given his prior behavior, namely Father had sexually abused at least one other child in his care. Tenn. Code Ann. § 36-1-113(i)(6), (7). Father had not paid child support consistent with the child support guidelines. Tenn. Code Ann. § 36-1-113(i)(9).

We do not wish to discount Father's love for the Child or his desire for the Child to establish a relationship with relatives. However, the Child has languished in custody for far too long and even expressed a desire to be adopted because she wants to move forward with her life. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. Accordingly, we affirm the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Bernadin L.

_____
JOHN W. McCLARTY, JUDGE